**AFFIRMED as MODIFIED and Opinion Filed May 21, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00867-CR**

**WILFRED JOSEPH LEGER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1820692-H**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Goldstein

Wilfred Joseph Leger appeals his aggravated sexual assault of a child conviction. Following appellant's plea of no contest, the trial court found him guilty and sentenced him to fifteen years' confinement. In three issues, appellant argues the trial court erred in failing to enter written findings of fact and conclusions of law and in denying his motion to suppress, and the judgment should be modified to reflect applicable court costs. In a single cross-issue, the State asserts that the judgment should be modified to reflect that appellant's sentence was not negotiated as part of a plea bargain. As reformed, we affirm the trial court's judgment.

# BACKGROUND

In May 2018, appellant was indicted on a charge of continuous sexual assault of G.Z., a child younger than fourteen. In September 2019, appellant filed a motion to suppress his video-recorded statement, taken following his arrest, in which appellant admitted to sexually assaulting the complainant. The motion alleged that, at the time of his conversation with law enforcement, appellant was "under arrest or substantially deprived of his freedom by the attendant conduct of said law enforcement officers," and his "detention or arrest was not lawful" and "without warrant or probable cause." The motion further alleged that appellant was deprived of his right to counsel and did not "intelligently, understandingly and knowingly waive his right to counsel" because he did not understand his rights. As a result, "any statements made while in custody for an illegal detention or interrogation" should be suppressed.

At a September 26, 2019, hearing on the motion to suppress, Midlothian police detective Erin Blust testified she interviewed appellant on April 19, 2018, after appellant was arrested and brought to the DeSoto police department. Blust read appellant his *Miranda* rights before questioning began, appellant stated he understood his rights, and appellant "didn't disagree to speak with" Blust. Appellant signed and dated the *Miranda* warnings, and Blust began questioning him.

Appellant indicated he had ADD and "anxiety," but he did not stop the interview or indicate that he did not want to speak with Blust at any point. Blust testified appellant "seem[ed] calm" and did not "show any signs to [Blust] that he felt as if he was under some kind of duress." Although appellant was in handcuffs at the beginning of the interview, Blust took them off during the interview and put them on again prior to going back down to the jail. A "couple of times," appellant told Blust "something to [the]effect" that she was "the nicest detective or law enforcement he's ever met." Appellant did not "simply just agree with everything [Blust] asked him about," he did not seem "under the influence of anything," and he indicated he "understood the consequences of speaking with" Blust. Appellant "even discuss[ed] that [he was] scared of what was going to happen after the fact."

Appellant testified about the day he spoke with Blust. Appellant attested that his "wife found out some of the information around about early afternoon," and "all of that excitement and running around" made appellant "very, very anxious and extremely tired." Appellant "had already been sick the past couple of days," and he "did not sleep the night before that." Appellant went to lie down "for a little bit" and, "[b]etween laying down and getting up and taking cannabidiol for [his] anxiety constantly," he did not "remember much." Appellant took "[a]bout an entire dropper's worth" of cannabidiol immediately prior to his arrest. Appellant affirmed that he was "under the influence of this cannabidiol" while talking to Blust and did not "remember exactly everything that happened." When appellant saw the video

–3–

of his conversation with Blust, it did not "refresh [his] memory as to what happened that day." The "biggest thing" that appellant remembered was "the excessive amount of police cars at [his] house all of a sudden." Appellant "saw that there was about 10 or 12 cars," four or five officers in his field of vision when he opened the door, and officers "walking around with dogs." The process of being arrested and taken to the police department where he was interviewed was "all kind of a blur." Appellant attested it was "a very good possibility [he] might have" told Blust what she wanted to hear. Appellant remembered his "original thought of wanting to talk to [Blust] because [he] thought [he would] just go ahead and talk with her, answer her questions, and then she would bring [him] back home." On cross-examination, the prosecutor asked if appellant recognized his signature on the *Miranda* warnings, and appellant testified, "Yes, that's my scribble." At the conclusion of the hearing, the trial court advised he would look at the video, took the matter under advisement and later denied appellant's motion to suppress.

On June 1, 2022, the day bench trial began, the trial court granted the State's motion to reduce the charged offense to the lesser included offense of aggravated sexual assault of a child. Appellant entered a plea of no contest and the court proceeded on the guilt/innocence phase of the trial.

G.Z., fifteen years old at the time of trial, testified appellant sexually assaulted her when she was seven, when she was "entering fourth grade," and when she was nine, and she testified to the details of the assaults. G.Z. testified appellant sexually

–4–

assaulted her in different ways "more than once." At the conclusion of trial, the trial court found the evidence sufficient to prove appellant guilty of aggravated sexual assault of a child. Following a sentencing hearing, the trial court sentenced appellant to fifteen years' confinement. This appeal followed.

## ANALYSIS

### First Issue: Findings of Fact and Conclusions of Law

In his first issue, complains that the trial court erred in not submitting written findings of fact and conclusions of law regarding its ruling on appellant's motion to suppress. After appellant's brief was filed, this Court abated the appeal so that the trial court could enter findings of fact and conclusions of law. The trial court entered findings of fact and conclusions of law which are of record before us. Accordingly, we need not further address appellant's first issue.

### Issue 2: Motion to Suppress

In his second issue, appellant argues the trial court erroneously denied his motion to suppress in violation of article 38.22[1] of the code of criminal procedure and *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Specifically, appellant complains he "did not knowingly, intelligently, and voluntarily waive his statutory rights because he was mentally incapable due to his anxiety, attention deficit disorder, and use of cannabidiol (CBD) prior to the interrogation." In so

---

[1] Although appellant's second issue refers to "article 38.23" of the code of criminal procedure, the entirety of appellant's argument under this issue cites article 38.22.

complaining, appellant does not argue: 1) that his oral statement was itself coerced such that its admission into evidence would violate due process; 2) the *Miranda* warnings administered before the statement were inadequate to protect his constitutional right to remain silent and privilege against compelled self-incrimination; or 3) that he denies, even implicitly, that he waived his right to remain silent by signing the written form to indicate he understood his *Miranda* rights before proceeding to answer Blust's questioning.

Article 38.22 Section 3(a)(2) prohibits the admission of an oral statement produced by custodial interrogation absent certain conditions having been met. TEX. CODE CRIM. P. art. 38.22 § 3(a)(2). The two conditions pertinent here are (1) warnings given during the recording but before the statement and (2) a knowing, intelligent, and voluntary waiver of the rights they reference. *See State v. Lujan*, 634 S.W.3d 862, 864–65 (Tex. Crim. App. 2021). The required order is to warn first, waive second, confess third, and these three things "must appear in the recording itself." *Lujan*, 634 S.W.3d at 865 (quoting *Joseph v. State*, 309 S.W.3d 20, 28 (Tex. Crim. App. 2010) (Keller, P.J., concurring)). Merely giving the warnings is insufficient; the defendant must waive the rights they reference. *Lujan*, 634 S.W.3d at 865. The burden of proof regarding the waiver rests with the State; it must prove by a preponderance of the evidence a knowing, intelligent, and voluntary waiver. *Id.*; *Joseph*, 309 S.W.3d at 24. Only "warned and waived" custodial statements are

admissible in evidence. *Lujan*, 634 S.W.3d at 865 (citing *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008)).

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). Generally, with respect to a suppression ruling the trial court's findings of historical fact supported by the record, as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor, are given "almost total deference." *Id.* at 89. A de novo standard is applied to a trial court's determination of the law and its application of law to the facts that do not turn upon an evaluation of credibility and demeanor. *Id.* We will uphold a trial court's ruling on a motion to suppress if the ruling is reasonably supported by the record, and the ruling is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

### a. *Miranda* Constitutional Challenge

To the extent appellant argues that anxiety, attention deficit disorder, and use of cannabidiol rendered appellant's waiver involuntary for Fifth Amendment purposes, the record is undisputed that any tendency these factors may have had to overbear appellant's will to resist waiving his *Miranda* rights was not due to any actions of the police. *See Leza v. State*, 351 S.W.3d 344, 350 (Tex. Crim. App. 2011) (although police were told shortly after interrogation began appellant had "'shot up' with heroin just before he was arrested, any tendency that the influence of heroin

–7–

may have had to overbear his will to resist waiving his *Miranda* rights was due to no causative action on the part of the police, and therefore cannot serve to undermine the voluntariness of his subsequent statements for Fifth Amendment purposes."). Before one can say a waiver of the *Miranda* right was involuntary, there must be some element of official intimidation, coercion, or deception. *Id.* at 349. The record before us, however, contains no indication or allegation of any official action that could be characterized as intimidation, coercion, or deception.[2] A defendant's voluntary choice to take drugs does not undermine the voluntariness of his statement for Fifth Amendment purposes. *See id.* at 350 (Fifth Amendment privilege against self-incrimination "is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' If the appellant's [drug] use . . . alone impelled him to confess, that is of no constitutional consequence.") (quoting *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001)).

However, these conditions may have a bearing, and are therefore factors that are relevant to determining whether this *Miranda* waiver was voluntary. *See Leza*, 351 S.W.3d at 251. During the hearing on the motion to suppress, the trial court

---

[2] We note without further discussion that appellant categorizes Blust's interrogation "tactics" as "reasonable" and "non-coercive." Appellant's argument that his response to questioning in the court or by Blust was "upsetting" people could be inferred that appellant felt some level of intimidation or need to acquiesce, contending that due to his "state of mind at the time of the interrogation, the statement is unreliable and a violation of his statutory rights." The argument reflects no element of official intimidation, coercion or deception; rather, this argument raises solely the question of state of mind as affecting the reliability of a *Miranda* based confession.

heard testimony from both the appellant and Blust and examined the videotape of the interview. Appellant testified on the issue of whether his statement was voluntary and that he had taken CBD prior to the interview. The trial court found Blust's testimony to be credible that appellant was 1) read his Miranda rights, signed and dated the Miranda warnings, waiving his rights under article 38.22; 2) "anxious, nervous and had condition known as . . . ADD"; 3) "[nevertheless]. . . calm and not under duress"; and 4) "talkative and understood [t]he consequences of the interview." The trial court concluded that appellant's statement was voluntarily made.

At the suppression hearing, Blust testified that the interview "wasn't more than two hours" and that appellant stated he understood his *Miranda* rights. Appellant was not handcuffed during the interview and did not seem as if he was under the influence of anything and thought "[appellant] was in a clear mind." Appellant was called to testify "strictly for the purpose of voluntariness of the interview and voluntariness of his statement." Appellant testified to having taken "about an entire dropper's worth" of cannabidiol prior to getting arrested, that it's "a very harsh antidepressant" and that he "just don't remember what's going on afterward." Appellant affirmed that he was "under the influence of this cannabidiol" and doesn't "remember exactly everything that happened." Watching the video did not refresh appellant's memory of what happened that day or the conversation with Blust; appellant just "remember[ed] seeing her face is about all I remember of her."

–9–

The trial court examined the videotape, both audio and video, and was able to observe appellant's demeanor and hear the statements to determine whether his waiver was voluntary. Based upon the record before us, we cannot say that the trial court erred (1) in concluding that the State satisfied its burden by a preponderance of the evidence to establish a valid waiver and (2) in denying appellant's motion to suppress to the extent it was based on federal constitutional law.

### b. Statutory Challenge Article 38.22

To the extent appellant argues anxiety, attention deficit disorder, and use of cannabidiol impacted the voluntariness of the waiver of his statutory rights under article 38.22, we note that, unlike a Fifth Amendment claim, a claim that a purported waiver of the statutory rights enumerated in Article 38.22 is involuntary need not be predicated on police overreaching. *See* TEX. CODE CRIM. PROC. art. 38.22; *Leza*, 351 S.W.3d at 352 (quoting *Oursbourn*, 259 S.W.3d at 172 (Tex. Crim. App. 2008)). The court of criminal appeals in *Leza* explained that "[c]ircumstances unattributable to the police that nevertheless impact an accused's ability to resist reasonable police entreaties to waive his statutory rights, such as intoxication, are 'factors' in the voluntariness inquiry, though they are usually not enough, by themselves, to render a statement inadmissible under Article 38.22." *Id.* (quoting *Oursbourn*, 259 S.W.3d at 173). Indeed, appellant avers that "the potential effects of the cannabidiol oil, combined with an unreasonable desire to acquiesce, due to his high level of anxiety and his attention deficit disorder, [appellant] did not likely possess the capacity to

–10–

resist reasonable, non-coercive tactics by Detective Blunt to persuade him to waive his statutory rights."

The video corroborates Blust's testimony. Blust began the interview by reading appellant his *Miranda* rights, including the right to terminate the interview at any time. Appellant affirmatively indicated he understood those rights and signed and dated the *Miranda* warnings before the interview began. The videotape shows appellant willingly participated in the interview. It does not show any improper conduct by the police. Consistent with Blust's testimony at the hearing on the motion to suppress, the videotape shows that appellant "seem[ed] calm" and did not "show any signs to [Blust] that he felt as if he was under some kind of duress." Nothing in appellant's demeanor during the interview reflects a high level of anxiety or impairment to adversely affect the knowing and intelligent waiver of his rights. The only adverse effect testified to by appellant is his inability to remember or have his recollection refreshed. To the extent appellant may have taken cannabidiol, experienced anxiety or the effects of attention deficit disorder during the interview, we conclude these factors were not enough, by themselves, to render appellant's statement inadmissible under Article 38.22. *See id.* On this record, we conclude the trial court did not abuse its discretion in overruling appellant's motion to suppress the video recording of his interview. *See Guzman*, 955 S.W.2d at 88–89. We overrule appellant's second issue.

**Issue Three: Court Costs**

–11–

In his third issue, appellant requests that the judgment be modified to properly reflect the appropriate court costs. The State agrees that the assessment of court costs should be modified, but not in the manner asserted by appellant. This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *accord Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified").

The Texas Code of Criminal Procedure requires that a judgment of conviction order the defendant to pay court costs. *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) (citing TEX. CODE CRIM. PROC. ANN. arts. 42.15, 42.16). Only statutorily authorized court costs may be assessed. *Id.* In 2019, the Legislature overhauled the system of court costs for criminal cases. *See* Act of May 23, 2019 [Cost Act[3]], 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982. Among other things, the Cost Act raised the amount of certain costs, consolidated others, repealed

---

[3] The full name of the act as originally introduced in the Senate was "an Act relating to the consolidation and allocation of state criminal court costs; increasing the amount of certain court costs and reducing the amounts of certain other court costs." *See* Tex. S.B. 346, 86th Leg., R.S. (2019). We refer to the act as the "Cost Act" for ease of reference.

–12–

some costs altogether, and recategorized certain costs as fines. With respect to its effective date, the Cost Act provides:

> SECTION 5.01. Except as otherwise provided by this Act, the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

*Id.* § 5.01. The offense in this case was alleged to have occurred on or about April 5, 2018. Thus, the Cost Act does not affect the assessment of costs in this case. *See Contreras v. State*, No. 05-20-00185-CR, 2021 WL 6071640, at *6 (Tex. App.—Dallas Dec. 23, 2021, no pet.) (mem. op. on reh'g) (not designated for publication). Instead, appellant's conviction is subject to costs as they existed before the Cost Act was enacted. *See Henderson v. State*, No. 05-21-00761-CR, 2022 WL 17974700, at *1 (Tex. App.—Dallas Dec. 28, 2022, no pet.).

The judgment assessed court costs against appellant in the amount of $386. The bill of costs includes charges totaling $436, broken down as follows:

> CHAP = $100.00 (Child Abuse Prevention Fund)
> CLK = $40.00 (Clerk's Fee)
> JURY = $1.00 (Jury Fee)
> CHSF = $10.00 (Courthouse Security Fee)
> CCC = $185.00 (Consolidated State Fees)
> CCRM = $25.00 (County Records Management)
> SPC = $25.00 (Specialty Court)
> SHF = $50.00 (Sheriff's Fee)

Appellant argues that the costs against him should be reduced in three ways.  First, he argues that a total of $101—consisting of the clerk's fee ($40), jury fee ($1), county records management fee ($25), courthouse security fee ($10), and specialty court fee ($25)—should be deleted as such costs were not authorized prior to the Cost Act. Second, appellant argues that the consolidated state fee should be reduced from $185 to $133, as that was the amount authorized to be charged under the law prior to the Cost Act.  Finally, appellant argues that the $100 fee for the child-abuse prevention fund should be removed because the penal code section listed in the judgment as the statute of conviction is not among the statutes for which that charge is authorized.  The State agrees that some of the costs and fees taxed against appellant were correct, others were unauthorized and should not have been assessed, and some costs were omitted and should be added.  The State requests that we modify the bill of costs to assess a total of $624 against appellant.  We address each cost issue in turn.

**Clerk's Fee.** Appellant argues that the $40 clerk's fee should be removed from the bill of costs because it was added by the Cost Act as part of the local consolidated fee.  *See* TEX. LOCAL GOV'T CODE ANN. § 134.101(b)(1).  We disagree. Although section 134.101 of the Local Government Code was added by the Cost Act, the fees it authorizes are not new.  Specifically, the clerk's fee was previously authorized by article 102.005 of the Code of Criminal Procedure, which provided that "[a] defendant convicted of an offense in a county court, a county court at law,

–14–

or a district court shall pay for the services of the clerk of the court a fee of $40." *See* Act of May 18, 1989, 71st Leg., R.S., ch. 1080, § 4, Tex. Gen. Laws 4354, 4355 (formerly codified at TEX. CODE CRIM. PROC. Ann. art. 102.005(a) (repealed by Cost Act, § 1.19)). The clerk's fee was not added, but rather reallocated from a stand-alone fee to part of the local consolidated fee.[4] Because this fee was authorized at the time of appellant's commission of the offense in this case, we decline to remove it from the bill of costs.

**Jury Fee.** Appellant argues that the $1 jury fee should be removed for the same reason as the clerk's fee. *See* TEX. LOCAL GOV'T CODE ANN. § 134.101(b)(3). The State argues that the fee should have been $4 instead of $1. We agree with the State. At the time of the offense, article 102.0045 of the Code of Criminal Procedure provided that "[a] person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Section 61.0015, Government Code." Act of May 25, 2005, 79th Leg., R.S., ch. 1360, § 5, 2005 Tex. Gen. Laws 4255, 4256 (formerly codified at TEX. CODE CRIM. PROC. ANN. art. 102.0045 (repealed by Cost Act, § 1.19)).

---

[4] Section 134.101 of the Local Government Code lists each individual fee as a percentage of the $105 local consolidated fee. The clerk's fee is listed as 38.0953%, which amounts to $40.000065. For this and other fees included in section 134.101, we will round to the nearest dollar when discussing the fee imposed.

Because the law at the time of the offense required a $4 jury fee to be assessed against appellant, we modify the bill of costs to reflect that amount.

**County Records-Management Fee.** Appellant argues that the $25 county records-management fee should be removed for the same reason as the above fees. At the time of the offense, article 102.005(f) provided that "[a] defendant convicted of an offense in a county court, a county court at law, or a district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code." Act of May 28, 2005, 79th Leg., R.S., ch. 804, § 2, 2005 Tex. Gen. Laws 2775, 2775–76 (formerly codified at TEX. CODE CRIM. PROC. ANN. art. 102.005(f) (repealed by Cost Act, § 1.19). The Cost Act merely reallocated the county records-management fee to section 134.101 of the Local Government Code as part of the local consolidated fee. *See* Cost Act, § 1.05; TEX. LOCAL GOV'T CODE § 134.101(b)(2). Because the former law authorized taxing this fee against appellant at the time of the offense, we decline to remove it from the bill of costs.

**Courthouse Security Fee.** Appellant argues that the $10 courthouse security fee should be removed for the same reason as the fees above. The State argues that the fee should be $5. We agree with the State. At the time of the offense, article 102.017 provided that "[a] defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court." Act of May 22, 1993, 73rd Leg., R.S., ch. 818, § 1, 1993 Tex. Gen. Laws 3258 (formerly codified at TEX. CODE CRIM.

PROC. ANN. § 102.017(a) (repealed by Cost Act, § 1.08). The Cost Act reallocated this cost to section 134.101 of the Local Government Code as part of the local consolidated fee and increased the amount to $10. *See* Cost Act, § 1.05; TEX. LOCAL GOV'T CODE § 134.101(b)(4). Because the former law authorized a trial court to charge only $5 for the courthouse security fee, we modify the bill of costs to reflect same.

**County Specialty Court Fee.** Appellant argues that the $25 specialty court fee should be removed. The State agrees. This fee was added by the Cost Act. *See* Cost Act, § 1.05 (codified at TEX. LOCAL GOV'T CODE ANN. § 134.101(b)(6)). We agree with the parties that this fee was not authorized at the time of the offense and remove it from the bill of costs.

**State Consolidated Fee.** The parties agree that the $185 state consolidated fee should be reduced. The Cost Act increased that fee from $133 to $185. *See* Cost Act, § 1.03 (amending TEX. LOCAL GOV'T CODE § 133.102(a)(1)). Because the fee was $133 at the time of the offense, we modify the bill of costs to reflect the reduced amount.

**Child-Abuse Prevention Fine.** Appellant argues that this charge should be removed because the statute authorizing it requires a conviction under section 22.021(a)(1)(B) of the Penal Code, whereas the judgment in this case states that appellant was convicted under section 22.021(a)(2)(B). *See* TEX. CODE CRIM. PROC. ANN. art. 102.0186(a) ("A person convicted of an offense under Section 21.02,

21.11, 22.011(a)(2), 22.021(a)(1)(B), 43.25, 43.251, or 43.26, Penal Code, shall pay a fine of $100 on conviction of the offense."). We reject this argument based upon this Court's modification of the judgment to reflect that appellant was convicted under Penal Code sections 22.021(a)(1)(B) and (a)(2)(B). We therefore decline to remove this charge from the bill of costs.

In addition to the above costs, fees, and fines, the State argues that the bill of costs omitted others that must be added. These are fees that were either repealed by the Cost Act—and thus omitted from the bill of costs even though they should have been included due to the date of the offenses at issue here—or that are still required to be charged but were nevertheless omitted from the bill of costs. To the extent such costs and fees were mandatory and required by statute to be applied in the event of appellant's conviction, we must modify the bill of costs to reflect them. *See Johnson*, 423 S.W.3d at 389 ("[A]ll costs assessed against a defendant can be separated into two categories: (1) mandatory costs and (2) discretionary costs."); *Henderson*, 2022 WL 17974700, at *3. We review each cost or fee in turn.

**Technology Fee.** At the time of the offense, article 102.0169 of the Code of Criminal Procedure provided that "[a] defendant convicted of a criminal offense in a county court, statutory county court, or district court shall pay a $4 county and district court technology fee as a cost of court." Act of May 31, 2009, 81st Leg., R.S., ch. 1183, § 1, 2009 Tex. Gen. Laws 3753 (formerly codified at TEX. CODE

CRIM. PROC. ANN. art. 102.0169(a) (amended by Cost Act, § 1.07). Use of the word "shall" makes this fee mandatory. We therefore modify the bill of costs to add it.

**DNA Cost.** At the time of the offense, article 102.020 of the Code of Criminal Procedure provided: "A person shall pay as a cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code[,]" which included an offense under section 22.021 of the Penal Code. *See* Act of May 19, 2015, 84th Leg., R.S., ch. 221, §§ 1, 5, 2015 Tex. Gen. Laws 1307, 1308, 1310 (formerly codified at TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (repealed by Cost Act, § 1.19) and TEX. GOV'T CODE ANN. § 411.1471(a)(1) (amended by Acts 2023, 88th Leg., ch. 543 (H.B. 3956), § 3, eff. Sept. 1, 2023)). Because appellant was convicted of aggravated sexual assault of a child, an offense under section 22.021 of the Penal Code, he was required to pay a DNA cost. We therefore modify the bill of costs to add this cost.

**Judicial Support Fee.** At the time of the offense, section 133.105 of the Local Government Code provided: "A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary." Act of May 28, 2007, 80th Leg., R.S., ch. 1301, § 3, 2007 Tex. Gen. Laws 4371, 4372 (formerly codified at TEX. LOCAL GOV'T CODE ANN. § 133.105(a) (repealed by Cost Act, § 1.19)). Because this fee was mandatory, we modify the bill of costs to add it.

**Indigent Defense Fee.** At the time of the offense, section 133.107 of the Local Government Code provided: "A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code." Act of May 26, 2011, 82d Leg., R.S., ch. 984, § 14, 2015 Tex. Gen. Laws 2461, 2476 (formerly codified at TEX. LOC. GOV'T CODE ANN. § 133.107(a) (repealed by Cost Act, § 1.19). Because this fee was mandatory, we modify the bill of costs to add it.

**Statewide E-filing Fee.** At the time of the offense, section 51.851 of the Government Code provided: "In addition to other court costs, a person shall pay $5 as a court cost on conviction of any criminal offense in a district court, county court, or statutory county court." *See* Act of May 16, 2013, 83rd Leg., R.S., ch. 1290 § 2, sec. 51.851(d), 2013 Tex. Gen. Laws 3269, 3270 (codified at TEX. GOV'T CODE ANN. § 51.851(d) (repealed by Cost Act, 1.19). Because this fee was mandatory, we modify the bill of costs to add it.

## MODIFICATION OF JUDGMENT

In a single cross-issue, the State asks us to modify the judgment to reflect that appellant's sentence was not negotiated as part of a plea bargain. The Code of Criminal Procedure requires that the judgment accurately reflect the terms of any plea bargain. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01(20). The record reflects

that, since the judgment was entered, the trial court has certified that this is not a plea bargain case. We therefore sustain the State's cross-issue and modify the judgment to reflect that there was no plea bargain agreement.

On our own review, we note that the judgment is incomplete relative to the statute of conviction.  Appellant was indicted for continuous sexual abuse of a child under 14, Penal Code 21.02(b), a felony one offense.  Prior to trial, the State moved to reduce the offense charged to a lesser included offense of aggravated sexual abuse of a child.  Appellant pled no contest to the lesser included offense and was tried and convicted of aggravated sexual assault of a child under the age of 14.  The judgment lists the statute of offense as 22.021(a)(2)(b), which, without more, would merely provide that (a) a person commits an offense . . . (2) if . . . (B) the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense.   The judgment is incomplete in that §22.021 is a conduct-oriented statute, using the conjunctive 'or' to distinguish and separate different conduct, and its various sections specifically define sexual conduct in ways that usually require different and distinct acts to commit.  *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). The judgment omits the portion of Section 22.021 that provides the detail relative to appellant's charged conduct; specifically:

> (a) A person commits an offense:
> (1) if the person:
> (B) regardless of whether the person knows the age of the child at the time of the offense, intentionally or knowingly [causes any of five enumerated types of sexual contact with the child]:

–21–

and
(2) if:
(B) the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense;

*See* TEX. PENAL CODE § 22.021(a).  The statute as referenced is incomplete and the record reflects that sections 22.021(a)(1)(B) and (a)(2)(B) read together reflect the offense appellant conceded to having committed and for which he was convicted. Because the "description of the statute of offense is not as precise as it could be," *see Williams v. State*, No. 05-20-00939-CR, 2022 WL 354587, at *2 (Tex. App.— Dallas Feb. 7, 2022, no pet.) (mem. op., not designated for publication), we modify the judgment to reflect that appellant was convicted under penal code sections 22.021(a)(1)(B) and (a)(2)(B). We therefore order that portion of the judgment modified to speak the truth.[5]

To summarize, we modify the judgment and bill of costs in the following ways:

### Judgment

- Under the entry for "Statute for Offense" we **ADD** "22.021(a)(1)(B) and" in front of the words "22.021(a)(2)(b) Penal Code"; and

- Under the entry for "Terms of Plea Bargain" we **REMOVE** the "X" from the box next to "Terms of Plea Bargain attached and

---

[5] This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *accord Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

incorporated herein by reference" and **REMOVE** the words "15 YEARS TDC - $0.00 FINE."

### Bill of Costs

- Regarding the entry for "JURY" we **REMOVE** the amount of $1.00 and **INSERT** $4.00 in its place;

- Regarding the entry for "CHSF" we **REMOVE** the amount of $10.00 and **INSERT** $5.00 in its place;

- Regarding the entry for "SCF" we **REMOVE** the amount of $25.00 and **REPLACE** it with $0.00;

- Regarding the entry for "CCC" we **REMOVE** the amount of $185.00 and **REPLACE** it with $133.00;

- We **ADD** an entry for "Technology Fee" and an amount of $4.00;

- We **ADD** an entry for "DNA Cost" and an amount of $250.00;

- We **ADD** an entry for "Judicial Support Fee" and an amount of $6.00;

- We **ADD** an entry for "Indigent Defense Fee" and an amount of $2.00;

- We **ADD** an entry for "Statewide E-filing Fee" and an amount of $5.00; and

- Regarding the entries for "Amount Assessed," "Unpaid Balance," and "Amount J/T Served," we **REMOVE** the amounts of $436.00 and **REPLACE** them with $624.00.

As modified, we affirm the trial court's judgment.

/Bonnie Lee Goldstein/

BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220867F.U05

–23–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILFRED JOSEPH LEGER,
Appellant

No. 05-22-00867-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F-1820692-H. Opinion delivered by Justice Goldstein. Justices Garcia and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court and the clerk's bill of costs are **MODIFIED** as follows:

### Judgment
- Under the entry for "Statute for Offense" we **ADD** "22.021(a)(1)(B) and" in front of the words "22.021(a)(2)(b) Penal Code"; and

- Under the entry for "Terms of Plea Bargain" we **REMOVE** the "X" from the box next to "Terms of Plea Bargain attached and incorporated herein by reference" and **REMOVE** the words "15 YEARS TDC - $0.00 FINE."

### Bill of Costs

- Regarding the entry for "JURY" we **REMOVE** the amount of $1.00 and **INSERT** $4.00 in its place;

- Regarding the entry for "CHSF" we **REMOVE** the amount of $10.00 and **INSERT** $5.00 in its place;

- Regarding the entry for "SCF" we **REMOVE** the amount of $25.00 and **REPLACE** it with $0.00;

- Regarding the entry for "CCC" we **REMOVE** the amount of $185.00 and **REPLACE** it with $133.00;

- We **ADD** an entry for "Technology Fee" and an amount of $4.00;

- We **ADD** an entry for "DNA Cost" and an amount of $250.00;

- We **ADD** an entry for "Judicial Support Fee" and an amount of $6.00;

- We **ADD** an entry for "Indigent Defense Fee" and an amount of $2.00;

- We **ADD** an entry for "Statewide E-filing Fee" and an amount of $5.00; and

- Regarding the entries for "Amount Assessed," "Unpaid Balance," and "Amount J/T Served," we **REMOVE** the amounts of $436.00 and **REPLACE** them with $624.00.

As **MODIFIED**, the trial court's judgment is **AFFIRMED**.


Judgment entered May 21, 2024